## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DANIEL McFADDEN,

        Plaintiff,

v.                    //    CIVIL ACTION NO. 1:04CV225
                                    (Judge Keeley)

CITY OF BRIDGEPORT,

        Defendant.

### MEMORANDUM OPINION AND ORDER

The question presented in this case is whether provisions of the defendant, City of Bridgeport's (Bridgeport), sign ordinance, Article 1325 of the Codified Ordinances of Bridgeport (the Ordinance), violate the First Amendment. The plaintiff, Daniel McFadden (McFadden), challenges the constitutionality of Sections 1325.07 and 1325.13 of the Ordinance on free speech grounds. Section 1325.07 prohibits the posting of "temporary" and "political" signs within city limits more than thirty (30) days before and forty-eight (48) hours after the specific event they publicize or the voting day. Section 1325.13 requires individuals to obtain permits from the city prior to displaying any signs, except those exempted from regulation by the Ordinance and "temporary" and "political" signs.

### Summary of Ruling

Section 1325.07 of Bridgeport's Ordinance is unconstitutional. By limiting the time period an individual may post political signs

within the City of Bridgeport, Section 1325.07 burdens speech. Furthermore, that burden is content-based since the Ordinance's temporal restrictions apply only to limited categories of signs based on what those signs say. Moreover, because the City's asserted interests in regulating temporary and political signs are not compelling, Section 1325.07 of Bridgeport's Ordinance fails to satisfy strict constitutional scrutiny and violates the First Amendment on its face.

Requiring individuals to obtain permits prior to engaging in protected speech also violates the First Amendment if no standards and procedures exist to determine the award of those permits. Nevertheless, this opinion does not reach the merits of McFadden's challenge to Bridgeport's permit requirement as an unconstitutional prior restraint on an individual's freedom to engage in political speech through the display of political signs. That challenge has been rendered moot by Bridgeport's subsequent amendment of the Ordinance. Although subsequent amendment or repeal of an ordinance does not necessarily moot a challenge to its pre-amendment language, such action likewise does not automatically necessitate review on the merits. Because the Court finds little likelihood that Bridgeport will reenact the pre-amendment version of Section 1325.13 (requiring individuals to obtain written approval and a

permit from the city prior to displaying political signs), and because the current version of Section 1325.13 imposes no permitting requirement on the display of political signs, McFadden's prior restraint challenge is moot.

For these reasons, as more fully discussed below, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** McFadden's motion for summary judgment, and **GRANTS-IN-PART** and **DENIES-IN-PART** Bridgeport's cross-motion for summary judgment.

## I. Jurisdiction

McFadden is a resident of Bridgeport, West Virginia, and a citizen of the United States. He owns a home in the residential neighborhood of West Gate where he has lived for over thirty-five (35) years. The City of Bridgeport is a municipal corporation organized under the laws of the State of West Virginia.

McFadden brings his constitutional challenge to Bridgeport's Ordinance as a civil rights action under Title 42, United States Code Section 1983. In pertinent part, 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

## MEMORANDUM OPINION AND ORDER

The United States Supreme Court has held that municipalities such as the City of Bridgeport are "persons" subject to the strictures of 42 U.S.C. § 1983. <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 690-91 (1978) (overruling <u>Monroe v. Pape</u>, 365 U.S. 167 (1961)). Thus, Bridgeport is not immune to a challenge to its Ordinance. Further, McFadden's civil rights action presents a federal question and jurisdiction is proper in this Court. 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(3).

## II. Background

### a. Factual History

In late August, 2004, McFadden painted two signs in preparation for the 2004 Presidential election. One sign read, "Veterans for Kerry – replant a Bush in Texas," while the other had the symbol of a heart on it and read, "The Heart of West Virginia Beats for Kerry." While preparing the signs for display, McFadden learned through an acquaintance that the City of Bridgeport had a sign ordinance regulating the placement of political campaign signs. Undeterred, McFadden began displaying the hand-painted signs, along with wire-hinged placards supporting the Kerry/Edwards ticket, in the front yard of his Bridgeport home on or about September 1, 2004, approximately sixty-two (62) days prior to the November 2, 2004 general election.

**MEMORANDUM OPINION AND ORDER**

Shortly after he began displaying his political signs, McFadden visited the Bridgeport Zoning Department and requested a copy of the City's sign ordinance. In return, an individual at the Zoning Department gave McFadden a copy of a "Notice" which references "Article 1325.07, <u>Temporary and Political Signs</u>, from the Codified Ordinances of Bridgeport." This Notice is used by City personnel to inform property owners that political signs have been removed from the premises.[1] He did not, however, receive a copy of the Ordinance.

Prior to the 2004 general election, McFadden generally displayed one or both of the hand-painted political campaign signs in the front yard of his home during the day and removed them at night. On at least one occasion, he did not display either sign in

---

[1] The "Notice" given to McFadden by Zoning Department personnel provides:

Please be advised the City of Bridgeport has taken down political signs from your premises. Political signs are only permitted 15 days prior to election as stated in Article 1325.07, <u>Temporary and Political Signs</u>, from the Codified Ordinances of Bridgeport. Article 1325.07 reads as follows:

(a) All political signs shall be permitted a maximum of fifteen (15) days prior to election.
(b) All temporary and political signs must be removed within forty-eight hours after the conclusion of the event. Any sign still in place after this period shall be confiscated by the City and the owner of the sign may be subject to prosecution.

All political signs shall be permitted beginning October 18, 2004 and must be removed by November 4, 2004.

If you have any questions concerning this matter, please do not hesitate to call the Office of Community Development at 842-8218.

his yard due to inclement weather. Further, McFadden displayed no signs outside his house for one week in October, 2004, because he was away from home.

At no time during McFadden's display of political signs on his property in advance of the 2004 presidential election did the City of Bridgeport take punitive action against him for violating its Ordinance. City personnel neither removed McFadden's signs nor posted a "Notice" of violation on his signs or real property. Although aware of the Ordinance and its prohibitions, McFadden intends to participate in future elections, including the 2006 general election, by displaying political signs on his property more than one month prior to those elections.

**b. Procedural History**

On November 3, 2004, McFadden, by his attorneys, Robert M. Bastress and Terri S. Bauer, filed an Amended Complaint pursuant to 42 U.S.C. § 1983 seeking a declaration that Bridgeport's Ordinance violates the First and Fourteenth Amendments of the Constitution. He also sought an injunction barring Bridgeport from enforcing its Ordinance against his placement of political signs on his property, and an award of costs and reasonable attorneys' fees. (Doc. No. 3.) In his Amended Complaint, McFadden claims that Bridgeport's Ordinance abridges his freedom of speech in two ways. First:

## MEMORANDUM OPINION AND ORDER

> The temporal restrictions in defendant City's sign ordinance [,Section 1325.07(a & b),] violates [sic] plaintiff's rights guaranteed to him by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 . . . . [Moreover] . . . . [t]he different treatment accorded political signs from nonpolitical signs in the . . . ordinance is an unwarranted and unconstitutional content discrimination . . . .;

and second:

> The permit requirement [,Section 1325.13,] is an unconstitutional prior restraint and confers unbounded and undue discretion on city officials over plaintiff's ability to express his political beliefs and therefore violates his rights under the First and Fourteenth Amendment[s] to the United States Constitution.

On November 19, 2004, the City of Bridgeport, by its attorneys, Norman T. Farley and Perry S. Jones, answered McFadden's Amended Complaint asserting that its sign ordinance "speaks for itself" and denying the legal conclusions drawn by McFadden's claims.

Approximately three (3) months later, on February 28, 2005, Bridgeport amended the challenged provisions of Article 1325, and the alleged impact of those amendments is reflected in the parties' respective dispositive filings. On August 10, 2005, McFadden filed a motion for summary judgment asserting five (5) grounds in support of his claims. Four (4) of those grounds argue in the alternative and are offered to support his claim that the temporal restrictions in Section 1325.07 violate the First Amendment. In essence they are:

> 1) The temporal restrictions on "temporary" and "political" signs in Section 1325.07 create content-based restrictions that do not serve compelling state interests;
> 2) If found to be content-neutral, however, then the temporal restrictions in Section 1325.07 create an unreasonable time restraint on protected speech;
> 3) If found to be content-neutral, however, then the temporal restrictions in Section 1325.07 affect the use of signs to communicate matters of public concern and create an unreasonable regulation of the manner of speech; and
> 4) As applied to McFadden, the temporal restrictions in Section 1325.07 are overbroad because the Ordinance regulates his ability to place signs on his own property.

McFadden's fifth ground reiterates his challenge to Section 1325.13 by asserting that Bridgeport's requirement that individuals obtain permits prior to the display of political signs is an unconstitutional prior restraint on a citizen's right to engage in political speech because undue discretion is placed in City officials to issue such permits.

On October 14, 2005, Bridgeport responded to McFadden's motion by filing a cross-motion for summary judgment refuting McFadden's claims. The City contends that, as the Ordinance now stands, the temporal restrictions found in Section 1325.07 are content-neutral because those restrictions similarly impact the display of both "temporary" and "political" signs, and because Bridgeport's "desires to promote aesthetics and traffic safety have nothing to do with the content of the temporary [and political] signs." Thus,

Bridgeport argues that Section 1325.07 constitutes a reasonable time, place, and manner regulation of speech that is narrowly tailored to achieve the City's substantial interests because adequate alternative channels for political speech, such as marching, pamphleteering, and advertising, exist and because it does not have a content-discriminatory motive. Finally, regarding Section 1325.13, Bridgeport argues that its February 28, 2005 amendments to the Ordinance moot McFadden's prior restraint argument because permits are no longer required prior to the display of political signs.

In his reply brief, (Doc. No. 10), McFadden does not contest the amended Ordinance's parallel application to both "temporary" and "political" signs. Rather, he asserts that political (and other temporary) signs are prohibited for all but sixty-four days every two years while signs authorized by other sections of the Ordinance may be displayed permanently. Thus, McFadden concludes that whether a sign is authorized for display by Bridgeport's Ordinance depends on what that sign says. If a sign relates to a political candidacy or an event, it is banned outside a narrowly constricted time period.

### III. Discussion

The First Amendment to the Constitution of the United States guarantees that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I. **Moreover,** "[t]he freedom of speech . . . which [is] secured by the First Amendment against abridgement by the United States, [is] among the fundamental personal rights and liberties which are secured to all persons by the Fourteenth Amendment against abridgement by a State." Burson v. Freeman, 504 U.S. 191, 195 (1992). Those rights and liberties are also protected from abridgment by the political subdivisions of the states. Whitton v. City of Gladstone, Missouri, 54 F.3d 1400, 1402 (8th Cir. 1995)(citing Lovell v. Griffin, 303 U.S. 444, 450 (1938)). Thus, the First Amendment protects a citizen's freedom of speech against abridgement by a municipal corporation through operation of the Fourteenth Amendment.

In this case, McFadden asserts that Bridgeport has abridged his freedom of speech by enacting certain provisions of its sign ordinance. Such First Amendment challenges are no stranger to the courts. Indeed, the United States Supreme Court has "often faced the problem of applying the broad principles of the First Amendment to unique forums of expression." Metromedia, Inc., v. City of San Diego, 453 U.S. 490, 500 (1981). Before this Court attempts such

10

application, however, it must consider whether review on the merits

of McFadden's challenge to the permitting requirement in Ordinance

Section 1325.13 is proper.

### a. **McFadden's Challenge to Section 1325.13 Is Moot**

McFadden challenges the permit requirement of Bridgeport's

Ordinance as an unconstitutional prior restraint on his ability to

engage in political speech through the display of political signs

outside his home. Prior to the February 28, 2005 amendments to the

Ordinance, Section 1325.13, provided that:

> All signs except exempt signs require a permit issued by
> the City. Temporary and political signs shall require
> written approval from the City prior to placement.

By contrast, Section 1325.13 currently reads:

> All signs except exempt signs and temporary signs require
> a permit issued by the City.

Further, the February, 2005 amendments incorporate the definition

of political signs into the definition of temporary signs. Thus,

under the Ordinance, neither a permit nor written approval is now

required from the City of Bridgeport prior to an individual's

display of political signs. As such, Bridgeport argues that

McFadden's challenge is rendered moot by the amendment of Section

1325.13.

Mere amendment or repeal of a challenged ordinance does not

automatically moot a challenge to it. American Legion Post 7 of

Durham, North Carolina v. City of Durham, 239 F.3d 601, 605 (4th Cir. 2001). Such measures, however, also do not foreclose a finding of mootness. Id. "The Supreme Court has held that in *some* circumstances, the repeal or amendment of a statute moots a challenge even where re-enactment of the statute at issue is within the power of the legislature." Id. at 606 (citing Massachusetts v. Oakes, 491 U.S. 576, 582 (1989); Kremens v. Bartley, 431 U.S. 119, 132 (1977))(emphasis added). To determine whether the circumstances surrounding the subsequent amendment of an ordinance moots a challenge to it, a court must consider "the practical likelihood of reenactment of the challenged law. . . ." Id.

The question here, thus, is not whether Bridgeport's removal of the permit requirement for political (and other temporary) signs was prompted by the pendency of McFadden's action. Rather, it is whether Bridgeport is likely to reenact such a permitting requirement should McFadden's challenge be mooted. If so, then a finding that Bridgeport's subsequent amendment of the challenged provision moots that challenge would be inappropriate and the Court must address the constitutionality of pre-amendment Section 1325.13. If little or no such likelihood of reenactment exists, however, then a finding that Bridgeport's February 28, 2005

amendment moots McFadden's specific challenge – that a standardless permitting requirement on the display of political signs is an unconstitutional prior restraint on his ability to engage in political speech – would be appropriate and the Court need not address the claim's merits. See Durham, 239 F.3d at 606.

In Durham, the Fourth Circuit Court of Appeals undertook a mootness inquiry and declined to reach the merits of the plaintiff's challenge to a version of the City's comprehensive sign ordinance in effect at the time the incidents giving rise to the challenge took place. Id. Instead, the appellate court upheld a finding below that a challenge to a prior iteration of the ordinance was mooted by subsequent amendment because there was "little likelihood of the City reenacting the [prior] ordinance if the district court's finding of mootness is affirmed." Id. In affirming the district court, the Fourth Circuit distinguished the Supreme Court's decision in City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982).

In Aladdin's Castle, the Supreme Court made clear that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Id. Rather, it is for the lower courts to determine whether the circumstances relating to that cessation warrant a

finding that the challenged practice is not likely to recur and, therefore, is moot. Id. at 289 n. 10.

The Supreme Court analyzed the circumstances attendant to the defendant city's voluntary cessation of a challenged practice through the amendment of a suspect ordinance, and found that the plaintiff's challenge to the ordinance was not mooted because the city had previously amended the ordinance "in response to court rulings and had announced its intention to re-enact the challenged provision if the judgment in question was vacated on mootness grounds." Durham, 239 F.3d at 605 (discussing the rationale underlying the Supreme Court's mootness inquiry in Aladdin's Castle). The Supreme Court, therefore, found "no certainty that a similar course would not be pursued by [the defendant city] if its most recent amendment were effective to defeat federal jurisdiction." Aladdin's Castle, 455 U.S. at 289.

By contrast, in Durham the Fourth Circuit found no such indication that the defendant city would reenact the challenged ordinance if it upheld the district court's ruling that subsequent amendment mooted the challenge. The City of Durham had begun the process leading to amendment of the ordinance seven months prior to the filing of the plaintiff's action in federal court; and, although the amended ordinance was enacted during the pendency of

the action, "the ordinance was revised long before the district court ruled in this case." 293 F.3d at 606. Consequently, the Fourth Circuit found it unlikely that the City of Durham would reenact the challenged ordinance once the plaintiff's challenge was mooted, and declined to reach the merits of the plaintiff's challenge to the pre-amendment ordinance. Id.

As in Durham, it is unlikely here that Bridgeport would reenact the challenged pre-amendment permitting provision requiring written approval and a permit from the city prior to an individual's display of political signs. First, Bridgeport's February 28, 2005 amendment was not in response to a ruling by any court; indeed, it occurred approximately one (1) year before any ruling of this Court. Furthermore, the deposition testimony of Randy Spellman ("Spellman"), Director of Community Development for the City of Bridgeport, reveals that, long before the February, 2005 amendment officially removed the permit requirement on the placement of temporary and political signs, Bridgeport had stopped attempting to enforce the requirement for logistical reasons. (Spellman Depo. at 9.) Spellman states:

> In the 1990's [sic][the City of Bridgeport] had, at one point, requested notification . . . in writing if you want (sic) to put signs up, but it honestly became an enforcement issue that just couldn't be tracked.

Id.

<u>**MEMORANDUM OPINION AND ORDER**</u>

Finally, nowhere in the record has Bridgeport indicated any intent to reenact its pre-amendment permitting requirement should McFadden's challenge be mooted.

While this Court is well aware of the chill cast upon the marketplace of ideas by standardless and procedureless permitting systems, see <u>e.g.</u>, <u>Lovell v. Griffin</u>, 303 U.S. 444 (1938)(finding an ordinance requiring written permission from the City Manager prior to distribution of literature to "strike[] at the very foundation of the freedom of the press by subjecting it to license and censorship"), Bridgeport's permit requirement escapes constitutional scrutiny due to the scope of the present challenge to it. McFadden challenges Section 1325.13 as an impermissible prior restraint on his (or any Bridgeport resident's) ability to engage in political speech through the display of political signs. Section 1325.13 of Bridgeport's Ordinance, however, no longer requires that political signs be permitted, and the Court has found it unlikely that Bridgeport will reenact the version of Section 1325.13 in effect prior to its February 28th, 2005 amendment. Thus, it is not necessary to reach the merits of McFadden's challenge to Section 1325.13 and that challenge is **MOOT**.

**McFADDEN v. CITY OF BRIDGEPORT**                                    **1:04CV225**

## b. <u>Temporal Restrictions Impermissibly Are Content-Based</u>

Although the February 28, 2005 amendments to Bridgeport's Ordinance altered the contours of the temporal restrictions placed on political (and other temporary) signs[2], those restrictions still exist.  Thus, the amendment's impact does not moot McFadden's otherwise ripe challenge to the temporal restrictions on the display of political signs found in Ordinance Section 1325.07.

### i. <u>Standard of Review</u>

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  Further, when applying the standard for summary judgment, a court must review the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. v. Catrett</u>, 477

---

[2] Prior to those amendments, Section 1325.07 authorized the display of political signs for only 15 days prior to an election or referendum, while signs then defined as temporary were authorized for 30 days in advance of the events they publicized.  Now, both temporary and political signs are prohibited more than 30 days before and 48 hours after the event they publicize or the voting day.

U.S. 317, 322-23 (1986). To withstand such a motion, the nonmoving party must present evidence from which "a fair-minded jury" could return a favorable verdict. See Anderson, 477 U.S. at 252. However, "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient..." Id.

In this case, the parties contend that no genuine issues of material fact exist regarding the terms of Bridgeport's Ordinance or McFadden's violation of those terms. After a thorough review of the record, the Court agrees that judgment as a matter of law is appropriate.

ii. **Analysis**

Signs are a "venerable medium for expressing political, social and commercial ideas." Metromedia, 453 U.S. at 501. Signs, however, also "pose distinctive problems that are subject to municipalities' police powers." City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994). This conflicting duality exists because signs, "like other media of communication, combine communicative and noncommunicative aspects." Metromedia, 453 U.S. at 502 (**referring specifically to the medium of billboards**). While "the government has legitimate interests in controlling the noncommunicative aspects of the medium, . . . the First and Fourteenth Amendments

foreclose a similar interest in controlling the communicative aspects." Id. (internal citations omitted).

Before a court may resolve the conflict of interests between an individual's right to communicate through the display of signs and a city's power to regulate that expression, it must conduct "a precise appraisal of the character of the ordinance as it affects communication." Metromedia, 453 U.S. at 503.  In the Fourth Circuit, that appraisal takes the form of the two-step approach adopted in Arlington County Republican Committee v. Arlington County, Virginia, 983 F.2d 587 (4th Cir. 1993).  A court first must determine whether existing case law controls its decision; if no case law controls, the court then must apply the test "established by the [United States] Supreme Court to determine the constitutionality of statutes under the First Amendment." Id. at 590-91.

### Step One: No Controlling Case Law

In undertaking the first step of the Arlington approach, a court begins "with the venerable principle that '[e]ach medium of expression . . . must be assessed for First Amendment purposes by standards suited to it, for each may present its own problems.'" Id. at 591 (quoting Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 557 (1975)).  Here, McFadden challenges Bridgeport's

regulation of the display of political signs.  A political sign is defined by Bridgeport in subsection (k) of Ordinance Section 1325.01 as:

> . . . a sign which indicates the name, cause or affiliation of a person seeking public or elected office or on which reference is made to an issue for which a public election or referendum is scheduled to be held.

Further, pursuant to the February 28, 2005 amendments, the Ordinance incorporates political signs within the definition of "temporary signs."  As such, subsection (o) to Section 1325.01 provides:

> "Temporary sign" means a sign which offers premises for development, sale, lease, or rent, or is otherwise for a temporary purpose, such as a special event, grand opening, public election or referendum, etc.  For the purposes of this article, the term "political sign" is deemed to be and is included within the definition of "temporary sign."

Moreover, the challenged temporal restrictions on the display of political (and other temporary) signs are outlined in subsections (a) and (b) of Ordinance Section 1325.07, which state:

> (a) All temporary signs shall be permitted for a maximum of thirty days prior to the event they advertise or the voting day.

> (b) All temporary signs must be removed within forty-eight hours after the conclusion of the event or a voting day.  Any temporary signs still in place after said

period may be confiscated by the City and the owner of the temporary sign may be subject to prosecution.[3]

These restrictions cut across all zoning districts and apply equally throughout the City of Bridgeport. They are not limited to nor are they excluded from residential areas.

Section 1325.10 of Bridgeport's Ordinance is also effective throughout the city. Rather than restrict the display of signs as does Section 1325.07, Section 1325.10 exempts the following types of signs from regulation:

> (a) One graphic advertising the sale or lease of property;
> (b) One graphic indicating the architect, engineer, project name, source of financing and contractor when displayed during the construction period and on a construction site and removed thirty days after construction is completed;
> (c) Governmental graphics and legal notices;
> (d) Directional graphics not exceeding six square feet in area;
> (e) Flags of any country, state or unit of local government;
> (f) Memorial plaques and historical signs;
> (g) Any lettering or design painted or applied directly to the surface of the structure;
> (h) Signs associated with churches and similar places of worship, not exceeding ninety-six square feet; and
> (i) Signs associated with public and nonprofit schools, not exceeding ninety-six square feet.

(Ordinance Section 1325.10.)

---

[3] Section 1325.99 of Bridgeport's Ordinance provides that:

Whoever violates any provision of this article shall be fined not more than five hundred dollars ($500.00).

<u>**MEMORANDUM OPINION AND ORDER**</u>

In this case, neither McFadden nor the City of Bridgeport relies on factually controlling Fourth Circuit or Supreme Court case law.  Rather, given the specific contours of the Ordinance, the parties argue that alternative theories of constitutional review are appropriate.  The regulations at issue here do not distinguish between residential and commercial property, or private and public property, or commercial and noncommercial messages.  Instead, Bridgeport's prohibition on the posting of political (and other temporary) signs applies equally to all areas within city limits and regulates a mix of commercial and noncommercial speech.  Likewise exempted from regulation across Bridgeport are signs carrying a hodgepodge of commercial and noncommercial messages.

Both the Supreme Court and the Fourth Circuit have addressed First and Fourteenth Amendment challenges to municipal sign ordinances.  <u>See</u> e.g., <u>Ladue</u>, 512 U.S. 43 (challenge to ordinance banning most residential signs); <u>Metromedia</u>, 453 U.S. 490 (challenge to ordinance regulating commercial and noncommercial speech on billboards differently); <u>Members of the City Counsel of the City of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789 (1984) (challenge to ordinance prohibiting the posting of signs on public property); <u>Arlington</u>, 983 F.2d 587 (challenge to ordinance limiting the number of temporary signs allowed on private property

22

within residential districts); <u>Major Media of the Southeast, Inc.</u>
<u>v. City of Raleigh</u>, 792 F.2d 1269 (4th Cir. 1986) (challenge to
ordinance regulating the display of "off-premise" signs).  This
Court, however, is aware of no precedent addressing an ordinance
that places temporal restrictions on both political and other types
of signs while leaving still other types of signs unrestricted
across both private and public property, in both residential and
commercial zoning districts.  Thus, given the specificity required
of First Amendment review, the Court finds no  controlling case law
and proceeds to step two of the <u>Arlington</u> approach.

### Step Two: Constitutional Analysis

"[U]nder the Supreme Court's test for determining whether a
[regulation] violates the First Amendment guarantee of freedom of
speech," the reviewing court must first question whether the
challenged regulation burdens speech. <u>Arlington</u>, 983 F.2d 587 at
593.  If so, the court must then determine whether that regulation
is content-based or content-neutral. <u>Id.</u>  Once that determination
is made, the appropriate level of scrutiny may then be applied to
decide whether the challenged regulation violates the Constitution.
<u>Ladue</u>, 512 U.S. 43 at 59 (O'Connor, J., concurring opinion).

## A. Section 1325.07 Burdens Speech

The freedom to engage in political speech lies at the core of the First Amendment because "the First Amendment reflects a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." Boos, 485 U.S. at 318 (quoting in part New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964))(internal quotations omitted). Moreover, when an individual engages in political speech through the display of signs on his or her own property, the "speaker" employs a "venerable means of communication that is both unique and important." Ladue, 512 U.S. at 54. Thus, both the subject matter and medium of speech represented by residential political signs are recognized as integral components of every citizen's First Amendment freedoms.

While the temporal restrictions in Section 1325.07 of Bridgeport's Ordinance cut across all zoning districts and apply to all signs defined as temporary by the City, the challenge here comes from a residential property owner seeking to post political signs on his own property unencumbered by Bridgeport's time constraints. Section 1325.07 prohibits McFadden (and all other Bridgeport residents) from engaging in speech that lies at the core of the First Amendment through the display of a unique and

24

important medium of communication for all but sixty-four (64) days every two years. Moreover, as the Supreme Court stated in United States v. Playboy Entertainment Group, Inc., 529 U.S. 803,813 (2000), "[i]t is of no moment that the statute does not impose a complete prohibition. The distinction between laws burdening and laws banning speech is but a matter of degree." Thus, it is beyond peradventure that the temporal restrictions on the display of political signs in Ordinance Section 1325.07 burden speech.

### B. Section 1325.07 Imposes Content-Based Burden

Given that Ordinance Section 1325.07 burdens speech, the Court must next determine whether that section's prohibition on the display of political (and other temporary) signs more than thirty (30) days before and forty-eight (48) hours after the specific event they publicize or the voting day is a content-neutral or content-based regulation of speech. Arlington, 983 F.2d at 594. "[I]n most cases, whether a law benefits or burdens speech by referring to content on its face is determinative of the law's content-based or content-neutral character." Durham, 239 F.3d at 607-08 (discussing Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622, 643 (1994)). Moreover, to be found content-based, a regulation need not discriminate on the basis of a speaker's point of view. Consolidated Edison Co. v. Public Service Comm'n, 447 U.S.

530, 537 (1980). Rather, the "First Amendment's hostility to content-based regulations extends . . . to prohibition of public discussion on an entire topic." Id.

McFadden asserts that Bridgeport's Ordinance prohibits the display of signs relating to specific subject matters for all but sixty-four (64) days every two years while signs relating to other subject matters may be displayed permanently. Moreover, only by reading the message on a sign may one determine whether that sign is subject to Bridgeport's temporal ban. Thus, McFadden argues, Section 1325.07 is content-based. He supports that argument by citing to numerous appellate decisions finding content-based restrictions in municipal sign ordinances similar to those of Bridgeport. See, e.g., Solantic, LLC, v. City of Neptune Beach, 410 F.3d 1250 (11th Cir. 2005); Whitton v. City of Gladstone, Missouri, 54 F.3d 1400 (8th Cir. 1995); and Matthews v. Town of Needham, 764 F.2d 58 (1st Cir. 1985).

In Matthews, the First Circuit found a town bylaw prohibiting the posting of most outdoor signs, including political signs, to be a content-based restriction on speech because certain categories of commercial speech were unencumbered by the ordinance. The ordinance was challenged by two residential property owners seeking to display political signs outside their homes. Id. at 59. After

the district court declared the ordinance unconstitutional and enjoined the Town of Needham from enforcing the bylaw with respect to the display of political signs, the town appealed. Upon review, the First Circuit focused its analysis on the plain language of the ordinance and observed:

> No political signs are allowed in any district in the Town of Needham; yet such signs as "For Sale" signs, professional office signs, contractors' advertisements, and signs erected for charitable or religious causes are allowed in all districts.

Id. at 60.

Given that disparity, the First Circuit rejected the town's argument that the ordinance was content-neutral and a reasonable time, place, and manner restriction, and affirmed the district court's finding that the ordinance was content-based because it authorized certain types of protected speech but prohibited others. Id. at 61.

In Whitton, the Eighth Circuit addressed a sign ordinance imposing a temporal ban on the display of political signs more than thirty (30) days before and seven (7) days after an election. Like Matthews, Whitton looked to the plain language of the challenged ordinance and affirmed the district court's finding that the ordinance was "content-based because it makes impermissible distinctions based solely on the content or message conveyed by the sign. The words on the sign define whether it is subject to the

durational limitations in [the ordinance]." Whitton, 54 F.3d 1404.

The court then provided examples to illustrate the content-based

character of the challenged ordinance's temporal restrictions:

> For instance, in some residentially-zoned areas of
> Gladstone, a permanent year round sign expressing support
> for a particular sports team would not be subject to the
> durational limitations while an identical sign made of
> the same material, with the same dimensions and the same
> colors, and erected on the same spot advocating a
> particular candidate for office would be.  In other
> residentially-zoned areas of Gladstone, a church may
> erect a permanent ground sign indicating church
> activities and times of services for an unlimited
> duration while the same sign could be posted for a total
> of only 38 days (30 days before election and seven days
> after) if it expressed its support for a church member's
> political candidacy.

Id.

In Solantic, the Eleventh Circuit focused on the outlined

exceptions to the challenged ordinance, and held that the

prohibition imposed by the ordinance on the display of political

and other types of signs was content-based on its face. Id. at

1266. As did the ordinance in Whitton, the challenged ordinance in

Solantic placed temporal restrictions on the display of political

signs relating to elections or referendums while exempting from

regulation a range of signs including governmental signs,

directional signs and "memorial" signs, among others. Id. at 1264-

65.  In reversing the district court's finding that the defendant

city's sign ordinance was content-neutral, the appellate court observed:

> The fact that these content-based provisions take the form not of regulations but of *exemptions* from regulations is immaterial.

Id. at n. 13 (emphasis in original).

In this case, the City of Bridgeport ignores the case law cited by McFadden and asserts that the temporal restrictions found in Section 1325.07 are content-neutral regulations of speech because they apply equally to all temporary and political signs, and because Bridgeport's interests in aesthetics and traffic safety have nothing to do with the content of those signs. Bridgeport further attempts to establish the content-neutrality of Section 1325.07 by arguing that it satisfies the standard necessary for content-neutral regulations to comport with the Constitution.[4] In doing so, it looks to dicta from the Fourth Circuit's decision in Arlington.[5]

In Arlington, a group of political candidates and county citizens challenged various provisions of an Arlington County,

---

[4] "[T]he government may regulate the time, place, and manner of [speech], so long as such restrictions are content neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternatives for communication." Burson, 504 U.S. at 197 (citing United States v. Grace, 466 U.S. 171, 177 (1983)).

[5] Bridgeport similarly looked to dicta from the Supreme Court of West Virginia's decision in Fischer v. The City of Charleston, 425 S.E.2d 194 (W.Va. 1992), in attempting to establish Section 1325.07's validity.

Virginia zoning ordinance on First Amendment grounds. 983 F.2d at 588. One of those provisions limited the number of "[t]emporary noncommercial signs" authorized for display in residential areas. <u>Id.</u> at n. 1.[6]  The Fourth Circuit performed a content-neutral analysis on the defendant County's challenged two-sign limit, and found the ordinance unconstitutional because it was not narrowly tailored to the County's significant interests in aesthetics and traffic safety. <u>Id.</u> at 594.  In <u>dicta</u>, the court then suggested means of regulation potentially less restrictive than those used by the defendant County:

> [I]t is evident that the County could promote its interests through other, less restrictive means. First, the County could regulate the design and condition of these signs. Second, to ensure traffic safety the County could prevent posting signs within a certain distance of the street. Third, <u>limiting the duration of these signs also furthers the County's interest</u>.

<u>Id.</u> (emphasis added).

Bridgeport relies on that <u>dicta</u> to argue that a temporal restriction on the display of political signs may represent a legitimate means to achieve its content-neutral interests. <u>Arlington</u>, however, does not support the application of a content-neutral analysis to Bridgeport's sign ordinance because in that case the Fourth Circuit did not undertake a content determinative

---

[6] None of the challenged regulations in <u>Arlington</u> involved temporal restrictions on the display of signs.

analysis of the challenged regulation.    Instead, it assumed
content-neutrality and stated:

> Initially, the [plaintiffs] claimed that the two-sign
> limit might be content based, since it exempted
> trespassing, for rent, and for sale signs. However, at
> oral argument they conceded that this was not the
> gravamen of their complaint.  Since we invalidate the
> two-sign limit on other grounds, we <u>assume for purposes</u>
> <u>of analysis that those provisions are content-neutral</u>.

<u>Id.</u> (emphasis added).

Here, the  plain language of Bridgeport's sign ordinance
compels a finding that the temporal restrictions outlined in
Section 1325.07 are content-based.  The only way to determine which
signs are subject to those restrictions is to read the messages
printed on them.  No one may display a sign relating to a political
candidacy or public election or referendum more than thirty (30)
days prior to or forty-eight (48) hours after an election, (Ord.
§ 1325.07(a)&(b)), yet governmental graphics and legal notices may
be displayed anywhere in the city permanently. (Ord. § 1325.10(c).)
Similarly, while a  Bridgeport resident may display a directional
sign reading "park in back," (Ord. § 1325.10(d)), or an historical
sign reading "George Washington slept here," (Ord. § 1325.10(f))
anytime he or she wants, that same resident may not display a sign
reading "Vote for Jim" two months before an election.

Likewise, an architect who designs, a bank that funds, or a
contractor who builds a store in the City of Bridgeport may display

a sign advertising its participation in that construction project during the entire construction process, (Ord. § 1325.10(b)), yet the store itself may only display a sign advertising its "Grand Opening" thirty (30) days before the event. (Ord. § 1325.07(a)&(b).) Once that store's doors open, moreover, it has only forty-eight (48) hours to remove that sign, _id_, while the architect, bank, or contractor may leave its sign up for thirty (30) more days. (Ord. § 1325.10(b).)

Importantly, these restrictions apply regardless of a sign's quality of construction or the materials used to build it. While a church may freely display a wire-hinged, cardboard placard with a call to worship on its side of the road, (Ord. § 1325.10(h)), a citizen living across the street is prohibited from displaying an identically constructed placard announcing the birth of his or her child more than two days after delivery. (See Spellman Depo. at 10)(indicating signs announcing the birth of a child are temporary signs which under the Ordinance must be removed forty-eight hours after the event).

Notwithstanding these evident disparities, Bridgeport argues that the temporal restrictions found in Section 1325.07 are content-neutral because its interests in aesthetics and traffic safety are not related to the content of the temporary [and

32

political] signs. This argument fails, however, because, while a content-based purpose may heighten the scrutiny applicable to a facially content-neutral regulation, the "mere assertion of a content-neutral purpose [is not enough] to save a law which, on its face, discriminates based on content." <u>Turner</u>, 512 U.S. at 642-43.

Here, Bridgeport goes no further than mere assertion. It provides no evidence that signs carrying political messages and signs relating to specific events give rise to adverse secondary effects that differ in any way from similarly constructed signs carrying messages Bridgeport allows to be permanently displayed. Political signs and other signs defined as temporary by the City of Bridgeport are regulated differently from other signs based on what they say. Section 1325.07 of Bridgeport's sign ordinance is a content-based regulation of speech.

### C. <u>Section 1325.07 Does Not Satisfy Strict Scrutiny</u>

Strict scrutiny applies to content-based regulations of speech. "If a statute regulates speech based on its content, it must be narrowly tailored to promote a compelling Government interest. If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." <u>Playboy</u>, 529 U.S. at 813 (citing <u>Reno v. American Civil Liberties Union</u>, 521 U.S. 844, 857 (1997)).

Here, Bridgeport's asserted interests for imposing the temporal restrictions on political (and other temporary) signs in Section 1325.07 are aesthetics and traffic safety. However, "a municipality's interests in traffic safety and aesthetics, while significant, have never been held to be compelling." Whitton, 54 F.3d at 1408; See also, Metromedia, 453 U.S. at 531 (Brennan, J., concurring); Solantic, 410 F.3d at 1268. Moreover, even if those interests were compelling, the temporal restrictions in Section 1325.07 of Bridgeport's Ordinance are not the least restrictive means to achieve those interests. To the extent political (and other temporary) signs deteriorate and create an aesthetic eyesore, Ordinance Section 1325. 09(1) already provides Bridgeport a content-neutral avenue to facilitate their removal. Section 1325.09(1) provides:

> Any sign which is in a state of disrepair may be subject to removal by the City upon the following conditions: if such a sign shall not be receipt (sic) of written notice (sic) of the condition of the sign from the City then the City may cause removal of such sign and any expense shall be paid by the owner of the sign.

Further, Bridgeport offers no support for the contention that the signs subject to Section 1325.07's temporal ban create safety hazards beyond those exempted from regulation. (See Spellman Depo. at 21)(having no knowledge of any traffic accident related to the posting of political signs). As such, Bridgeport may adequately

address the safety hazards created by all signs through the content-neutral application of set-back limits or other reasonable content-neutral methods.

Section 1325.07 of Bridgeport's sign ordinance burdens speech by placing temporal restrictions on the display of political (and other temporary) signs.  That burden is content-based because it applies to those signs based on what they say.  Moreover, because Bridgeport's interests in aesthetics and traffic safety are not compelling, and temporal restrictions are not the least restrictive alternatives available to achieve those interests, Section 1325.07 does not survive strict scrutiny.  Thus, Section 1325.07 of Bridgeport's sign ordinance is an impermissible content-based regulation of speech that facially violates the First Amendment of the Constitution.[7]

## IV. <u>Award of Costs and Fees Not Warranted</u>

McFadden seeks an award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for prevailing on his First Amendment challenges to Bridgeport's sign ordinance. (Doc. No. 3 at 5.)  In pertinent part, 42 U.S.C. § 1988 provides:

---

[7] Because the Court invalidates Ordinance Section 1325.07 as an impermissible content-based regulation of speech, it need not address McFadden's alternative grounds of challenge to that Ordinance Section.

**MEMORANDUM OPINION AND ORDER**

> In any action or proceeding to enforce a provision of section[] . . . 1983 . . . of this title, . . . the court, in its discretion may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . .

Beyond his bald request, however, McFadden provides no argument or documentation as to why the Court should grant his prayer for relief in this case. Accordingly, McFadden has thirty (30) days from the entry of this Order to file a memorandum in support of his request for costs and reasonable attorneys' fees. Bridgeport will then have fifteen (15) days to respond and McFadden seven (7) days to reply.

## V. Conclusion

The Court **GRANTS-IN-PART** and **DENIES-IN-PART** McFadden's motion for summary judgment, (Doc. No. 6), and **GRANTS-IN-PART** and **DENIES-IN-PART** the City of Bridgeport's cross-motion for summary judgment. (Doc. No. 8.) as follows:

1.  McFadden's challenge to Section 1325.13 of Bridgeport's sign ordinance, the permit requirement, is **MOOT**;

2.  The Court **DECLARES** Section 1325.07 regulating "Temporary" signs to be an impermissible content-based regulation of speech in violation of the First Amendment of the Constitution and **ENJOINS** the City of Bridgeport from

enforcing any provision of Section 1325.07 of Article 1325 of the Codified Ordinances of Bridgeport; and

3.    The Court **DEFERS** any decision on McFadden's request for the award of costs and reasonable attorneys' fees until the matter is briefed in light of the Court's decision.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: March 20, 2006.


/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE